**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 93-2933

READING & BATES PETROLEUM COMPANY,
READING & BATES EXPLORATION COMPANY, AND
READING & BATES DRILLING COMPANY,

Plaintiffs-Appellees,

VERSUS

BENTON MUSSLEWHITE, THE LAW OFFICES OF
BENTON MUSSLEWHITE, AND PETER MANANGKALANGI,

Defendants-Appellants.

Appeal from the United States District Court
For the Southern District of Texas

(    February 4, 1994    )

Before GARWOOD, SMITH and DeMOSS, Circuit Judges.

BY THE COURT:

Reading & Bates, by its Motion to Vacate Stay, asks this Court to reconsider the order entered by a majority of this Court (Judge Smith, dissenting) on December 21, 1993, which granted Musslewhite's motion for stay pending appeal to a limited extent in the following language:  "The execution of the December 20, 1993 Commitment Order is stayed pending further order of this Court." We decline to reconsider for the following reasons:

First of all, a majority of this panel believes that the stay order granted under date of December 21, 1993 was correct. The criteria to be used in determining whether to grant a stay of a district court's order in this Circuit are well-settled. Because of the pertinency to the present appeal, we quote verbatim from the decision in United States v. Baylor Univ. Medical Ctr., 711 F.2d 38, 39 (5th Cir. 1983), as follows:

> Four factors must be considered by this Court in determining whether to stay the district court's Order under Fed. R. App. P., Rule 8. These are: (1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest. (Citations omitted.)

> However, this Court has refused to apply these factors in a rigid mechanical fashion. Indeed, in Ruiz v. Estelle, 650 F.2d 555 (5th Cir. 1981), this Court held that the movant `need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in the favor of granting the stay.'

The critical issues to be decided on the merits of this appeal are whether the orders of the district court (1) determining that an attorney practicing before that court was in civil contempt of a prior order entered by another judge of that court, and (2) ordering the incarceration of that attorney from 8 a.m. to 5 p.m. each business day until he purged himself of such contempt, were correct. The majority had no trouble whatsoever in determining that Musslewhite, by his original Notice of Appeal and his Motion to Stay, has presented "a substantial case on the merits" and that a "serious legal question is involved." Having so determined, the

2

majority next determined that the "equitable balance does weigh heavily in favor of granting the stay."  To paraphrase some of the language from the Baylor case, the district court's order has placed Musslewhite "between a rock and a hard place."  He can comply with the contempt order of December 13, 1993 and dismiss the state court proceeding, thereby rendering moot his contention that the permanent injunction entered by Order of March 3, 1992 did not require him to dismiss such suit[1], or he can spend each business day in the custody of the U. S. marshal, thereby suffering irreparable harm if it should be ultimately determined that the contempt order of December 13, 1993 was not appropriate. Furthermore, we note that the granting of our stay could not possibly have caused "substantial harm" to Reading & Bates, in light of the fact that the controversy as to the effect of the federal proceeding on the state court proceeding has been going on for more than ten years.  In addition, Reading & Bates' motion to vacate does not come anywhere close to suggesting any harm from our granting such stay.

In conclusion, we emphasize that we are not deciding the merits of the appeal or expressing any opinion on the resolution of that serious legal issue.  All we do today is to DENY Reading &

---

[1]The March 3, 1992 order forbade Musslewhite from further prosecution of the state suit, which the judge issuing the March 3, 1992 order plainly knew was then pending; all Musslewhite has done, or attempted to do, is to leave the state suit in precisely the same status (or, if anything, in an even more inactive status) as it was in immediately before issuance of the March 3, 1992 order. Musslewhite's possible difficulties in other, unrelated cases are wholly irrelevant to whether what he did or attempted to do violated the March 3, 1992 order.

Bates' Motion to Vacate Stay and to REAFFIRM our stay order of December 21, 1993.

Sua sponte this Court orders that this case shall be set for submission to an oral argument panel, and that immediately upon the filing of the record herein, the Clerk of this Court shall establish an expedited briefing schedule for the submission of this case to such oral argument panel.

JERRY E. SMITH, Circuit Judge, dissenting:

In partially granting the motion for stay pending appeal, and in subsequently refusing to vacate that stay, the panel majority has unnecessarily interfered with the district court's reasonable efforts to achieve compliance with its orders. Moreover, the majority, while making an ad hoc decision to enter and continue the stay, has failed to apply the appropriate standards as enunciated in the well-established precedents of this court. In dissenting, I write separately to express concern that there is an increasing tendency to second-guess district courts on the question of stays pending appeal and to enter stays merely to preserve the status quo, with little attention to the prerequisites for such stays.

I.

This is an instance of an attorney's disdainful and persistent disregard for the orders and directives of the federal courts. The

plaintiff, Peter Manangklangi, and his attorney, Benton Musslewhite, filed a federal action in federal district court in 1979 against the three Reading & Bates defendants ("Reading and Bates"), seeking damages for an injury allegedly suffered during offshore oil well workover operations near Indonesia. In 1984, that action was dismissed with prejudice. Manangklangi did not appeal.

In the meantime, in 1983, Manangklangi, through Musslewhite, filed an action in state district court, alleging the same cause of action. In 1986, Reading & Bates filed in federal court a complaint for injunctive relief against Musslewhite, seeking to proscribe Musslewhite's further prosecution of the state suit. In 1992, the federal district court granted Reading & Bates's motion for summary judgment and permanently enjoined Manangklangi and Musslewhite from prosecuting the pending state suit or any action, in any court, asserting claims based upon the injury in question. Once again, Manangklangi did not appeal.

In July 1993, the state court dismissed the still-pending 1983 lawsuit after notice was given that it was subject to dismissal for want of prosecution. A month later, Musslewhite filed in the state court a "Motion for New Trial, Rehearing, To Reconsider the Dismissal Order, and To Reinstate the Case." The justification given for reinstatement was that matters were pending in the Supreme Court of the United States and the Texas Supreme Court that had a bearing on the merits of Manangkalangi's claim and that the state court should reinstate the state suit, retain it on the

docket, and stay all proceedings pending disposition of the subject proceedings in the state and federal supreme courts.

In October 1993, Musslewhite personally appeared at a status conference with the state district judge and urged that the case be reinstated. The state court granted the motion to reinstate.

## II.

In October 1993, Reading & Bates filed in federal court a motion for contempt and a motion to show cause why Musslewhite should not be held in contempt. On December 15, 1993, the federal district court entered an order finding Musslewhite in contempt and ordering him to purge himself of his contempt.[2]

---

[2] Specifically, the order directed Musslewhite to purge himself of contempt by doing the following:

(a) Bring to the attention of the Judge of the [state district court] the Final Judgment of this Court above-referenced, including the injunctive order contained therein and of the need for Defendants to purge themselves of contempt of this Court by withdrawing their previous motion filed by Benton Musslewhite for reinstatement . . . and obtaining reentry of an Order of Dismissal such as that entered by the state district court on July 15, 1993.

(b) Fully and completely comply with all provisions of the Court's Final Judgment entered March 5, 1992, by causing [the state suit] to be DISMISSED and to CEASE and DESIST in prosecuting any claims which Defendants are prohibited by said Final Judgment from prosecuting in any state or federal court in this country.

(c) File with this Court no later than December 17, 1993, a sworn statement in this matter setting forth the steps that have been taken in order to purge Defendants of contempt, to obtain the reversal of the Order reinstating the state cause . . . , which had granted Defendants' state court motion that had been filed in contempt of this court, and to obtain dismissal of that action.

(d) Reimburse Plaintiffs for all attorneys' fees and costs of litigation incurred in this cause in connection with this contempt proceeding. Plaintiffs' counsel shall file and serve upon Defendants an affidavit of such attorneys' fees and costs no later than December 17, 1993; but Plaintiffs' Motion for Costs and Attorneys' Fees incurred in [the state suit] is DENIED.

The next day, Musslewhite sent a representative to appear on his behalf before the judge presiding in the state court proceeding. The representative stated that, although Musslewhite had requested the conference with the court to take place, "the original reason for setting this particular conference had fallen through because he had been unable to reach his client." No mention was made of any intention to dismiss the state suit. Then, on December 17, Musslewhite appeared before the state judge but gave no indication of an intention to dismiss the state action.

After Musslewhite took no action to purge himself of contempt, the district court held a show-cause hearing on December 20, at which Musslewhite argued that the contempt order represented a premature and impermissible modification of the injunction and that the injunction was impermissibly vague. The court found that Musslewhite's failure to withdraw the retention motion and effect a dismissal of the state suit constituted a violation of the injunction and of the contempt order.

The court issued a second contempt order, directing Musslewhite to jail from 8 a.m. to 5 p.m. each business day beginning December 22, until he had purged himself of the contempt. The court denied Musslewhite's motion to stay the order pending appeal. On December 21, Musslewhite filed a notice of appeal from the two contempt orders.

Musslewhite filed in this court a motion for stay of the

---

The court warned that if the orders were not complied with by December 17, 1993, a hearing would be held on December 20 to show cause why further sanctions should not be imposed.

contempt orders pending appeal. On December 21, this emergency motions panel, over my dissent, stayed execution of the December 20 commitment order. On January 18, 1994, Reading & Bates filed in this court a motion to vacate the December 21 stay.

III.

Musslewhite's argument in support of a stay pending appeal is pure sophistry. He argues that, although the federal district court enjoined him from "prosecuting" the state suit, that order was vague and that his failure to withdraw the retention motion and effect a dismissal of the state suit was not a violation of that injunction or of the first contempt order.

The state court dismissed the case "for want of prosecution." By any reasonable definition, an attorney's determined and successful effort to reinstate such a suit, after he has been told to drop it, constitutes "prosecution" of that suit.

Musslewhite was in repeated and flagrant disregard of the orders of the district court. That court patiently afforded Musslewhite numerous opportunities to comply and provided Musslewhite with a more than adequate forum in which to explain his position, but to no avail. Under the circumstances, the district court was well within its discretion in determining that incarceration was the only reasonable means of ensuring compliance with its orders.

By staying the contempt orders pending appeal, the panel

majority has awarded Musslewhite a victory he ill deserves and, in so doing, had substantially undermined the ability of this district court, and any other district court faced with today's action as a precedent, to effect the orderly disposition of the business before it in the face of recalcitrant attorneys such as Musslewhite.[3]

Most importantly, the panel majority has improperly applied the requirements for a stay pending appeal.[4]  It is well established that courts of appeals are not merely to substitute their judgment for that of the district court in deciding to issue a stay pending appeal.

Stays pending appeal constitute extraordinary relief and are to be entered only when four conditions are met:  (1) movant's likelihood of success on the merits; (2) irreparable injury to the movant if a stay is not granted; (3) a showing that the stay would not substantially harm the other party; and (4) a demonstration that the stay would serve the public interest.  United States v. Baylor Univ. Medical Ctr., 711 F.2d 38, 39 (5th Cir. 1983).  We generally recognize that the second condition is modified as follows:

> [T]he movant need not always show a "probability" of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay

---

[3] This is not Musslewhite's first scrape with the courts.  See Musslewhite v. State Bar of Tex., 786 S.W.2d 437 (Tex. 1990) (affirming revocation of law license for violating disciplinary rule and for violating order not to take on new clients during period of suspension), cert. denied, 111 S. Ct. 2891 (1991).

[4] See generally John Y. Gotanda, The Emerging Standards for Issuing Appellate Stays, 45 BAYLOR L. REV. 809 (1993).

> . . . . Of course, if the balance of equities (_i.e,_ consideration of the other three factors) is not heavily tilted in the movant's favor, the movant must then make a more substantial showing of likelihood of success on the merits in order to obtain a stay pending appeal.

_Ruiz v. Estelle_, 650 F.2d 555, 565-66 (5th Cir. Unit A June 1981) (per curiam).

We should evaluate these factors in Musslewhite's case, then, by first examining the last three factors. The injury is not irreparable, for Musslewhite can purge himself of contempt at any moment by effecting the dismissal of the state suit. But assuming _arguendo_ that the commitment order constitutes irreparable harm, and that a stay would not substantially harm Reading & Bates, the stay certainly would not serve the public interest and, obviously, is contrary to the public interest. That is because the stay permits Musslewhite to continue to be in open disregard of the reasonable orders of the district court, a circumstance that can only promote disdain for the courts and contributes to disorder in the legal system.

> [F]ederal courts have the power to enjoin plaintiffs who abuse the court system and harass their opponents. Indeed, federal courts have broad powers to protect their judgments and the integrity of the courts as a whole [, including] the power to enjoin "any future litigation on any cause of action arising from the fact situation at issue in [the] case."

_Villar v. Crowley Maritime Corp._, 990 F.2d 1489, 1499 (5th Cir. 1993) (citations omitted) (last bracket in original), _cert. denied_, 62 U.S.L.W. 3451 (U.S. Jan. 10, 1994).

If, then, we view the other factors as "not heavily tilted in [Musslewhite's] favor," he "must then make a more substantial

showing of likelihood of success on the merits" to obtain a stay. There is no likelihood that Musslewhite can prevail under any reasonable reading of the district court's injunction prohibiting him from prosecuting the state court lawsuit.

The test is not whether there is any <u>possibility</u> that Musslewhite can prevail. Indeed, there is the chance that a panel majority of this court, considering Musslewhite's pending appeal, could decide that his appeal has merit. But the question is whether he has made a strong enough showing <u>now</u> on the merits that he can be excused from complying with the district court's important directive during the weeks and even months that his appeal will be pending.

Under <u>Ruiz</u>, the balance of the equities plainly does not weigh strongly in Musslewhite's favor. Even if he is able to parse the injunction and urge a strained reading by which the motion to reinstate the state suit does not constitute "prosecution" of that action, this would be the most technical of distinctions, and we would be faced still with a recalcitrant attorney who has been told to terminate state court proceedings but who, in the face of that, has taken affirmative steps, once those proceedings were routinely dismissed as part of an annual purging of the docket, to reinvigorate that cause. Surely the balance of the equities cannot weigh in favor of such a circumstance.

The point is that there is a presumption of correctness in the district court's orders, as that court has the obligation to maintain the orderliness of its proceedings and to exercise

reasonable control over attorneys practicing as officers of the court.  We overstep our bounds when, merely to preserve the status quo, we substitute our judgment for that of the able district judge in the instant case.  This is serious error, and I respectfully dissent from the well-intended view of my conscientious colleagues.