# United States Court of Appeals
# for the Fifth Circuit

_____

No. 25-60694

CONSOLIDATED WITH

No. 26-60013

_____

United States Court of Appeals
Fifth Circuit

**FILED**

February 11, 2026

Lyle W. Cayce
Clerk

VAPOR TECHNOLOGY ASSOCIATION; MS SMALL VTC BUSINESSES ASSOCIATION CORPORATION, *doing business as* MS SMALL BUSINESSES ALLIANCE; HEMA MONICA, L.L.C.; THE SMOKEY GUYS, INCORPORATED; BYRAM VAPE EMPIRE, INCORPORATED; MS VAPORS, L.L.C.; VAPE EMPIRE, INCORPORATED; SMOKE CITY LUCEDALE, L.L.C.; REVIVE LUCEDALE, L.L.C.; REVIVE HURLEY, L.L.C.; TJ PATEL, L.L.C.; NUP 2, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

CHRIS GRAHAM, *Mississippi Commissioner of Revenue*,

*Defendant—Appellee*.

_____

Appeals from the United States District Court
for the Southern District of Mississippi
USDC No. 1:25-CV-336

_____

PUBLISHED ORDER

Before STEWART, WILLETT, and WILSON, *Circuit Judges*.

Don R. Willett, Circuit Judge:

A group of retailers, distributors, and trade associations in the electronic nicotine industry sued to enjoin enforcement of Mississippi House Bill 916. But Article III standing is a prerequisite to our jurisdiction—and the challengers have not established it here. We therefore DENY their motion for an injunction pending appeal.

I

In March 2025, Mississippi Governor Tate Reeves signed H.B. 916 into law. The statute requires the State's Commissioner of Revenue to maintain a directory listing only FDA-approved electronic nicotine devices.[1] Products not included in the State's directory generally may not be sold at retail in Mississippi,[2] and manufacturers must certify that their devices have received FDA approval.[3] Violations carry both civil and criminal penalties.[4]

Dissatisfied with the new law, two industry trade associations, one distributor, and nine retailers sued the Commissioner in federal court.[5] **Blue. Br. at 11–12.** They alleged that H.B. 916 violates their constitutional rights, interferes with the FDA's regulation of electronic nicotine devices, and is preempted by the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* The

---

[1] Miss. Code. Ann. §§ 75-102-1, 75-102-2.

[2] *See id.* § 75-102-2(10)(a).

[3] *See id.* § 75-102-2(1)–(3).

[4] *See id.* § 75-102-2(11)(a).

[5] The Plaintiffs–Appellants are Vapor Technology Association; MS Small VTC Businesses Association Corporation; Hema Monica, LLC; The Smokey Guys Inc.; Byram Vape Empire, Inc.; MS Vapors, LLC; Vape Empire, Inc.; Smoke City Lucedale, LLC; Revive Lucedale, LLC; Revive Hurley, LLC; TJ Patel, LLC; and NUP 2 LLC.

day after filing suit, Plaintiffs moved for a temporary restraining order and a preliminary injunction to bar enforcement of the statute.

After holding a hearing on the emergency motions, the district court ordered focused briefing on Article III standing—a threshold jurisdictional issue.[6] Once briefing concluded, the court denied injunctive relief and dismissed the action, concluding that Plaintiffs had failed to identify a legally cognizable injury sufficient to establish standing.[7] Plaintiffs promptly appealed.[8]

On appeal, Plaintiffs again seek to enjoin enforcement of H.B. 916 pending resolution of the appeal.[9] Because standing is a prerequisite to any such relief, we address it first.

## II

We consider four factors when deciding whether to grant an injunction pending appeal. The movant must show "(1) a strong likelihood of success on the merits; (2) irreparable injury in the absence of an injunction; (3) that the balance of hardships weighs in their favor if injunctive relief is granted; and (4) that the public interest favors such relief."[10]

---

[6] *See* U.S. CONST. art. III, § 2 (restricting federal judicial power to the resolution of "Cases" and "Controversies"); *United States v. Texas*, 599 U.S. 670, 675 (2023) ("[A] case or controversy can exist only if a plaintiff has standing to sue.").

[7] *See* No. 1:25-cv-336, 2025 WL 3731013, at *4–5 (Dec. 15, 2025).

[8] *See* 28 U.S.C. § 1291.

[9] *See* FED. R. APP. P. 8(a)(2) (authorizing injunctive relief pending appeal).

[10] *Whole Woman's Health v. Jackson*, 13 F.4th 434, 441 (5th Cir. 2021) (per curiam) (citing FED. R. APP. P. 8(a)(2)(A)(i)).

Plaintiffs suggest that we employ the more lenient test outlined in *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23 (5th Cir. 1992). Under that test, the movant

Here, the first factor—likelihood of success on the merits—is dispositive. Because standing is a prerequisite to success on the merits, Plaintiffs' failure to demonstrate it forecloses injunctive relief.[11]

## III

No standing means no likelihood of success on the merits.[12]

## A

Article III standing requires: (1) an "injury in fact"—"an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) a causal connection showing the injury is "fairly traceable" to the challenged

---

"need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay." *Id.* (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A June 1981)). But the *Wildmon* standard applies when a party moves to stay an injunction that the district court *granted*, not when—as here, a party asks an appellate court to issue injunctive relief the district court has *denied*. *See, e.g., id.* at 22–23; *Campaign for S. Equality v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014). This case therefore falls under *Whole Woman's Health*, 13 F.4th at 441. And under either standard, the motion fails for the same reason: Plaintiffs lack standing.

[11] *Cf. NAACP v. Tindell*, 95 F.4th 212, 218 (5th Cir. 2024) (per curiam) (denying injunction pending appeal for lack of standing).

[12] Without standing, a plaintiff cannot obtain injunctive relief because the court cannot reach the merits—and necessarily, the plaintiff cannot show likely success on the merits. *See Tindell*, 95 F.4th at 216–18. Our sister courts agree. *See Am. Fed'n of Teachers v. Bessent*, 152 F.4th 162, 174 (4th Cir. 2025) ("On its own, the lack of standing means Plaintiffs cannot show they are ultimately likely to succeed on the merits."); *Moms for Liberty – Wilson Cnty. v. Wilson Cnty. Bd of Educ.*, 155 F.4th 499, 512 (6th Cir. 2025) ("[B]y failing to adequately demonstrate standing, Plaintiffs necessarily cannot establish a likelihood of success on the merits[.]" (quotation omitted)); *Obama v. Klayman*, 800 F.3d 559, 565 (D.C. Cir. 2015) ("The 'affirmative burden of showing a likelihood of success on the merits . . . necessarily includes a likelihood of the court's *reaching* the merits, which in turn depends on a likelihood that plaintiff has standing.'" (emphasis in original) (quotation omitted)).

conduct; and (3) redressability—that the injury will "likely" be "redressed by a favorable decision."[13]

B

Here, Plaintiffs fail to identify an injury in fact. Although they argued financial injury in the district court, Plaintiffs do not press that theory on appeal and have therefore forfeited it.[14] ***See generally* Blue Br. at 12–15 (alleging only constitutional injury).**

On appeal, Plaintiffs instead assert that their legally protected interest "is not in committing a crime, but in enforcing the Constitution." **Blue Br. 14; Gray Br. at 3 ("Plaintiffs-Appellants' interest is the prevention of unconstitutional enforcement of federal law in violation of § 337(a)").** They contend that H.B. 916 contravenes federal law that preempts state enforcement of FDA regulations. And because preemption doctrine derives from the Supremacy Clause, Plaintiffs characterize the alleged injury as constitutional.[15]

True, constitutional injuries can create standing.[16] But even constitutional injuries must be concrete and particularized—more, they must belong to the plaintiff, not the public at large.[17] As the Supreme Court has

---

[13] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up); *Tindell*, 95 F.4th at 216 ("[A]n injunction is always improper if the district court lack[s] jurisdiction." (quotation omitted)).

[14] *E.T. v. Paxton*, 41 F.4th 709, 717 (5th Cir. 2022) ("[A]rguments in favor of jurisdiction can be forfeited.").

[15] 21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."). *See* U.S. Const. art VI, cl. 2.

[16] *See Lutostanski v. Brown*, 88 F.4th 582, 586 (5th Cir. 2023).

[17] *See Lujan*, 504 U.S. at 560–61.

repeatedly emphasized, plaintiffs may not "establish standing simply by claiming an interest in governmental observance of the Constitution." [18] Instead, they must allege "a particular and concrete injury" to a "personal constitutional right." [19]

Plaintiffs do not do so here. Rather than identify a particularized constitutional injury of their own, they assert a generalized grievance: that Mississippi has enacted and seeks to enforce a statute allegedly inconsistent with federal law. But a generalized interest in constitutional governance, standing alone, is insufficient to confer standing. Article III bars federal courts from resolving such abstract disputes.

## C

The federal regulatory backdrop confirms the absence of any individualized injury.

Federal law prohibits manufacturing or selling electronic nicotine devices that the FDA has not approved. Under the Family Smoking Prevention and Tobacco Control Act (TCA), the FDA regulates "cigarettes, cigarette tobacco, roll-your-own-tobacco, and smokeless tobacco," as well as "any other tobacco products that the Secretary by regulation deems to be subject to" the TCA.[20] In 2016, the FDA extended that authority to all electronic nicotine delivery systems, including those

---

[18] *See Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*, 454 U.S. 464, 482 (1982) (quotation omitted).

[19] *See id.* at 482; *See Deep S. Ctr. For Env't Justice v. EPA*, 138 F.4th 310, 317 (5th Cir. 2025) ("In cases brought by organizational plaintiffs, it is of particular importance that 'standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy.'" (quotation omitted)).

[20] 21 U.S.C. § 387a(b).

containing synthetic nicotine.[21] The TCA further requires that tobacco products not on the market as of February 15, 2007, receive FDA authorization before entering commerce—confirming that electronic nicotine devices qualify as "tobacco products" subject to federal approval.[22]

That federal scheme underscores why Plaintiffs' asserted injury rests not on any individualized harm, but on a generalized disagreement with Mississippi's enforcement choices. Plaintiffs insist that they need only show an interest "arguably within the zone of interests to be protected or regulated by the statute."[23] **Gray Br. at 4.** But that doctrine, where applicable, operates as a prudential limitation on statutory causes of action; it does not displace the Constitution's irreducible requirement of an injury that is "concrete," "particularized," and "actual or imminent."[24]

## IV

Because Plaintiffs assert only a generalized theory of constitutional injury—one that Supreme Court precedent squarely forecloses[25]—we hold

---

[21] *See* Deeming Tobacco Products to be Subject to the Federal Food, Drug, and Cosmetic Act, 81 Fed. Reg. 28,974, 29,028 (May 10, 2016) (codified at 21 C.F.R. §§ 1100, 1140, 1143); *see also* 21 U.S.C. § 321(rr)(1)–(2) ("The term 'tobacco product' means any product . . . containing nicotine from any source[.]").

[22] *See* 21 U.S.C. § 387j(a)(1)(a)–(a)(2)(A); *see also* 21 C.F.R. § 1114.5 ("A new tobacco product may not be introduced or delivered for introduction into interstate commerce under this part until [the] FDA has issued a marketing granted order for the product.").

[23] *See Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970).

[24] *See Lujan*, 504 U.S. at 560–61; *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 ("Whether a plaintiff comes within the zone of interests is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." (cleaned up)).

[25] *See Valley Forge*, 454 U.S. at 482.

that they lack Article III standing and thus cannot succeed on the merits.[26] Accordingly, we decline to enjoin enforcement of H.B. 916 and DENY the motion for an injunction pending appeal.

---

[26] *See Tindell*, 95 F.4th at 218 (denying injunction pending appeal for lack of standing).